**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CORE FUNDING GROUP, LP                    CIVIL ACTION

VERSUS                                    NO: 07-4273

MICHAEL H. McINTIRE, McINTIRE            SECTION: B(5)
AND McINTIRE, LLC, HENRY T. DART
AND HENRY DART, ATTORNEYS AT
LAW, A PROFESSIONAL CORPORATION

<u>ORDER AND REASONS</u>

Before the Court is Defendants', Michael H. McIntire and

McIntire and McIntire, LLC ("McIntire Defendants") Motion for

Summary Judgment (Rec. Doc. No. 144), joined by Defendants Henry T.

Dart and Henry Dart ("Dart Defendants") (*see* Rec. Doc. No. 165),

and Plaintiff Core Funding Group, L.P.'s ("Core") Motion for

Summary Judgment (Rec. Doc. No. 160). Both motions are opposed.

Also before the Court is the McIntire Defendants' opposed

Motion to Sever or Bifurcate Trial on Counter-Claim (Rec. Doc. No.

167, *see* Plaintiff's Opposition at Rec. Doc. No. 178).

For the following reasons,

**IT IS ORDERED** that Defendant' Motion for Summary Judgment

(Rec. Doc. No. 144) is **GRANTED IN PART** and **DENIED IN PART;**

Plaintiff's Motion for Summary Judgment (Rec. Doc. No. 160) is

**GRANTED IN PART** and **DENIED IN PART;** and

Defendants' Motion to Sever or Bifurcate Trial on Counter-

Claim (Rec. Doc. No. 167) is **DISMISSED.**

1

Prior to January 2004, the McIntire Defendants, along with several other attorneys including the Dart Defendants, filed a mass tort/class action lawsuit entitled *In re Harvey TERM Litigation*, No. 01-8708, Division "D", in the Civil District Court for the Parish of Orleans, State of Louisiana (the "Underlying Litigation").   Rec. Doc. No. 144-2, at 1.   The Plaintiff's Management Committee appointed in the Underlying Litigation implemented a financing committee, known as the "25% Club", to pay the costs associated with filing and prosecuting the litigation. *Id.* at 2.   To join the "25% Club", an attorney had to bring his assessment payments to a balance of $200,000 and commit to pay his share of additional costs in the litigation should the fund become exhausted.   *Id.*   In return, attorneys in the "25% Club" were to receive a significantly higher share from any settlement or judgment than non-member attorneys.   *Id.*

To enable the McIntire Defendants to join the "25% Club", Core issued a $200,000 loan to the McIntire Defendants on or about January 5, 2004, on which the Dart Defendants signed as guarantor. Rec. Doc. No. 144-2, at 2; Rec. Doc. No. 160-3, at 1.   The loan documents include: (1) Offer to Lend/Loan Contract; (2) Promissory Note; (3) Executor Letter; (4) Exhibit A; (5) Exhibit B; (6) Letter of Protection; (7) Notice of Assignment; (8) Security Agreement; (9) Absolute, Unconditional, and Irrevocable Transfer Sale and

2

Agreement.[1]   Rec. Doc. No. 160-3, at 4.   The Loan Contract, Promissory Note, and Security Agreement state that the transaction shall be governed by Ohio law.   *Id.* at 5. Core additionally filed a UCC-1 Financing Statement on January 22, 2004.   *Id.*   The documents purport to create a security interest in the attorneys' fees to be produced in the Underlying Litigation, as well as in other legal accounts receivable and attorney fee interests of the McIntire Defendants.   Rec. Doc. No. 144-2, at 4.   The ultimate due date or maturity date on the promissory note was 3 years, or January 5, 2007.   Rec. Doc. No. 160-3, at 5.   The interest rate varied depending on the year – 14.65% for the first year, 15.75% for the second year, and 17.25% for the third year – and the interest rate upon default was 1.25% per ten day period.   *Id.* at 5-6.   The documents also provide that Core is entitled to reasonable attorney fees incurred to obtain and collect a judgment.   *Id.* at 6. To date, the defendants have not repaid any of the loan.   *Id.* at 5.

Core initially filed this lawsuit on August 22, 2007.   Rec. Doc. No. 1.   However, the McIntire Defendants were dismissed from this action without prejudice on March 23, 2009 due to Core's failure to show good cause why service of process had not been effected upon the McIntire Defendants.   *See* Rec. Doc. No. 10.   Core

---

[1]Defendants assume the authenticity of these documents for purposes of their Motion for Summary Judgment <u>only</u> in order to narrow the issues before the Court; for purposes of trial and in opposition to Core's Motion for Summary Judgment, Defendants deny their authenticity and Core's status as holder of them, as set forth *infra*.   Rec. Doc. No. 144-2, at 3, n.2.

3

amended its Complaint to bring the McIntire Defendants back into the suit on October 2, 2009, but on March 11, 2010, this Court granted the McIntire Defendants' Motion to Dismiss for lack of subject matter jurisdiction, although Core was given the opportunity to amend its Complaint to cure the defect. *See* Rec. Doc. No. 70. Core filed its Second Amended Complaint on April 14, 2010, yet the McIntire Defendants were dismissed again on January 19, 2011, without prejudice, on account of issues with Core's corporate existence. *See* Rec. Doc. No. 117. The McIntire Defendants were then brought back into this suit on February 18, 2011 via Core's Third Supplemental and Amended Complaint. *See* Rec. Doc. No. 123.

Summary Judgment Standard:

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate

4

that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

## I. Defendants' Motion for Summary Judgment

Defendants contend that this Court should dismiss Core's Complaint on the following grounds: (1) lack of standing or capacity; (2) maintenance and champerty; and (3) prescription, statute of limitations, and/or the doctrine of laches. Rec. Doc. No. 144, at 1. Defendants additionally maintain that Core should not be allowed to collect prejudgment interest due to incessant delays in prosecuting the suit, that the default interest rate provided for in the alleged loan documents is substantively unconscionable, and that the attorney fee provisions are void and unenforceable. *Id.*

### A. *Lack of Standing or Capacity*

As detailed in this Court's previous order regarding Core's corporate existence, Core's Texas charter was forfeited on August 28, 2009. *See* Rec. Doc. No. 117. However, its charter was reinstated on February 11, 2011. *See* Rec. Doc. No. 123-1.

Defendants argue that Core's general partner, as reflected on several filings with the Texas Secretary of State, including Core's Certificate of Limited Partnership, is Vineyard **Capital**, LLC, and not Vineyard Capital **Management**, LLC, as Core contends.  Rec. Doc. No. 144-2, at 7-8.  Because Vineyard Capital, LLC has not existed since August 27, 2007, Defendants argue that Core cannot exist, and therefore this suit cannot be maintained.  *Id.* at 8-9.

Pursuant to the testimony of Core's president, at the time of Core's formation in December 2001, Core's organizers intended its general partner would be a newly formed Delaware LLC called "Vineyard Capital, LLC."  Rec. Doc. No. 163, at 6.  However, when the parties attempted to form Vineyard Capital, LLC, there was already a Delaware LLC in that name formed March 26, 1998 by someone wholly unrelated to Core.  *Id.*  Accordingly, Core's organizers formed Vineyard Capital Management, LLC, in December 2001.  *Id.*  Core's organization documents, however, were mistakenly filed with Vineyard Capital, LLC listed at its general partner, although such mistake has been corrected by a Certificate of Amendment filed with the Texas Secretary of State by Core on April 19, 2011, amending Core's certificate of partnership to reflect the name of its general partner as Vineyard Capital Management, LLC.  *Id.*  Vineyard Capital Management, LLC was reinstated in Delaware on October 18, 2010.  *Id.*

6

As both documentary evidence and testimony shows that Core, its general partner, and its limited partner Integrated Holdings, are all in existence and in good standing, Defendants' Motion for Summary Judgment cannot be granted on the basis of Core's lack of standing or capacity at this time.

B.   *Maintenance and Champerty*

As stated by the Ohio Supreme Court[2]:

> "Maintenance" is assistance to a litigant in pursuing or defending a lawsuit provided by someone who does not have a bona fide interest in the case.  "Champerty" is a form of maintenance in which a nonparty undertakes to further another's interest in a suit in exchange for a part of the litigated matter if a favorable result ensues. 14 Ohio Jurisprudence 3d (1995), Champerty and Maintenance, Section 1. "The doctrines of champerty and maintenance were developed at common law to prevent officious intermeddlers from stirring up strife and contention by vexatious and speculative litigation which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of the law." 14 Corpus Juris Secondum (1991), Champerty and Maintenance, Section 3. See, also, *Bluebird Partners, L.P. v. First Fid. Bank, N.A.* (2000), 94 N.Y.2d 726, 709 N.Y.S.2d 865, 731 N.E.2d 581.

*Rancman v. Interim Settlement Funding Corp.*, 789 N.E.2d 217, 219-220 (Ohio 2003).  Defendants contend that the instant action involves the "funding of litigation by an officious intermeddler with no bona fide interest in the Underlying Litigation, with the expectation of receiving payment (at a hefty premium) out of the proceeds of that litigation," and therefore the contracts at issue are void *ab initio* in violation of the principles of maintenance

---

[2]The parties do not dispute that Ohio law applies to this issue.

and champerty.  Rec. Doc. No. 144-2, at 9.

In finding that the advances made in *Rancman* constituted champerty and maintenance, the Ohio Supreme Court stated, "[e]xcept as otherwise permitted by legislative enactment or the Code of Professional Responsibility, a contract making the repayment of funds advanced to a *party* to a pending case *contingent upon the outcome* of that case is void as champerty and maintenance.  Such an advance constitutes champerty and maintenance because it gives a nonparty an impermissible interest in a suit, impedes the settlement of the underlying case, and promotes speculation in lawsuits." *Rancman*, 789 N.E.2d at 221 (emphasis added).  Indeed, the cases cited by Defendants all involve funding being made to an actual litigant in the suit, not to counsel of any of the parties. Additionally, subsequent cases have found the advancement of funds to a party not to constitute maintenance and champerty where the obligation to repay the funding was not contingent on the outcome of the lawsuit. *See Lillibridge v. Tarman*, 2009 WL 1311017 (Ohio Ct. App. 2009); *Ohio Farm Bureau Federation, Inc. v. Amos*, 2004 WL 2003087 (Ohio Ct. App. 2009).

Here, the purpose of the loan was to enable the McIntire Defendants, attorneys for several litigants in the Underlying Litigation, to join the "25% Club", a financing committee implemented to pay the costs of prosecuting the litigation with the benefit of receiving a higher share from any settlement or judgment

than non-"25% Club" attorneys.  Repayment of the loan was not
solely contingent on the outcome of the Underlying Litigation.
Moreover, the public policy interests behind the doctrines of
maintenance and champerty are not present in this case, as the
Underlying Litigation would proceed whether or not the McIntire
Defendants were members of the "25% Club", therefore the remedial
process of the law is not impeded nor can the litigation be deemed
"speculative."  Accordingly, Defendants' Motion for Summary
Judgment is denied on this basis.

C.  *Prescription, Statutes of Limitation, and Laches*

Defendants correctly state that under Louisiana conflict of
laws principles, applicable in this action pursuant to *Klaxon v.*
*Stentor Electric Co.*, 313 U.S. 487 (1941), and its progeny,
although Ohio's substantive law governs the action, Louisiana's law
of prescription generally applies.  Rec. Doc. No. 144-2, at 12.
Specifically, La. Civ. Code art. 3549(B) provides:

> B. When the substantive law of another state would be
> applicable to the merits of an action brought in this
> state, the prescription and peremption law of this state
> applies, except as specified below:
>
> (1) If the action is barred under the law of this state,
> the action shall be dismissed unless it would not be
> barred in the state whose law would be applicable to the
> merits and maintenance of the action in this state is
> warranted by compelling considerations of remedial
> justice.
>
> (2) If the action is not barred under the law of this
> state, the action shall be maintained unless it would be
> barred in the state whose law is applicable to the merits
> and maintenance of the action in this state is not

> warranted by the policies of this state and its
> relationship to the parties or the dispute nor by any
> compelling considerations of remedial justice.

However, Defendants mistakenly assert that the applicable prescriptive period is three years under La. Civ. Code art. 3494 for "an action on money lent." Rec. Doc. No. 144-2, at 13. Pursuant to well-established rules of statutory construction,

> Where two statutes deal with the same subject matter,
> they should be harmonized if possible, as it is the duty
> of the courts, in the construction of statutes, to
> harmonize and reconcile laws. However, if there is a
> conflict, that statute specifically directed to the
> matter as issue must prevail as an exception to the
> statute more general in character.

*Black v. St. Tammany Parish Hosp.*, 25 So.3d 711, 717-18 (La. 2009) (citing *LeBreton v. Rabito*, 714 So.2d 1226, 1229 (La. 1998); *Kennedy v. Kennedy*, 699 So.2d 351, 358 (La. 1997); *Chappuis v. Reggie*, 62 So.2d 92, 95 (1952); La. Civ. Code art. 13). La. Civ. Code art. 3498 provides that actions on promissory notes are subject to a prescriptive period of five years, commencing on the date that payment becomes due. As this provision specifically governs the action at issue, the applicable prescriptive period of five years commenced the date the note became due on January 5, 2007, and therefore this action has not prescribed under Louisiana law.

While the suit has not prescribed under Louisiana law, Louisiana's relevant conflict of laws provision states that in such

circumstances "the action shall be maintained *unless* it would be barred in the state whose law is applicable to the merits and maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice." La. Civ. Code art. 3549(B)(2). The parties do not dispute that the applicable Ohio statute of limitations has not yet been exhausted. Rec. Doc. No. 144-2, at 15; Rec. Doc. No. 163, at 8. Defendants argue, however, that the suit is time-barred under Ohio's doctrine of laches. Rec. Doc. No. 144-2, at 15.

Laches is an equitable doctrine, defined by the Ohio Supreme Court as "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Connin v. Bailey*, 472 N.E.2d 328 (Ohio 1984); *Hayman v. Hayman*, 919 N.E.2d 797, 803 (Ohio Ct. App. 2009). "The elements of a laches defense are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for such delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *Natl. Court Reporters, Inc. v. Krohn & Moss, Ltd.*, 2011 WL 550100, *4 (Ohio Ct. App. 2011) (quoting *State ex rel. Cater v. N. Olmsted*, 631 N.E.2d 1048 (Ohio 1994)). The party seeking to invoke the defense of laches must show that he "has been materially prejudiced by the delay of the person asserting his claim," as "[d]elay in asserting a right does

11

not of itself constitute laches." *Id.*

Defendants claim that they have been materially prejudiced by Core's delay due to the prejudgment interest that has been running against them as well as by the limited time within which the McIntire Defendants were able to conduct discovery as a result of being brought back into the lawsuit on the eve of trial, thereby prejudicing their ability to defend themselves. Rec. Doc. No. 144-2, at 16-17. Core's initial Complaint was filed in August 2007, only seven months after the alleged default, but the McIntire Defendants contend that they could not conduct discovery during the first two years of the suit because "they had not been served with it and issue was not joined as to them." *Id.* at 17. Core, however, has provided evidence in its opposition memorandum that calls into question whether the McIntire Defendants were in fact served on September 12, 2007. Rec. Doc. No. 163, at 2-3. Nonetheless, after being brought back into the suit in 2009 and 2010, the McIntire Defendants' failure to conduct discovery was of their own volition, as they never filed a motion to stay discovery while their dispositive motions were pending nor have they shown how participating in discovery would have adversely affected their previously filed motions. Accordingly, the Defendants have failed to show an unreasonable, inexcusable delay and any material prejudice sufficient to warrant the application of the doctrine of laches.

As the instant action is not time barred under applicable Louisiana and Ohio law, and Defendants have neither argued nor does this Court find that maintenance of the action in this state is not warranted by the policies of this state and its relationship to the parties or the dispute nor by any compelling considerations of remedial justice, Defendants' Motion for Summary Judgment on the basis of prescription, statute of limitations, and/or the doctrine of laches is denied.

D.   *Prejudgment Interest*

Defendants alternatively argue that prejudgment interest should be denied due to Core's undue delay in prosecuting the instant lawsuit. Rec. Doc. No. 144-2, at 17-19. As set forth above, Core's initial complaint was filed in August 2007, only seven months after the alleged default, and although the McIntire Defendants were dismissed in early 2009 when Core failed to show good cause why service of process had not been effected, Core has recently produced evidence indicating that the McIntire Defendants may have indeed been served with the initial Complaint in September 2007. Rec. Doc. No. 163, at 2-3. Despite the tumultuous procedural history of this action, Core has raised a genuine issue regarding the original service on the McIntire Defendants, rendering a denial of prejudgment interest based on Core's delay in prosecuting the action inappropriate at this time.

E.   *Substantive Unconscionability of Default Interest Rate*

Defendants further argue that the default interest rate on the promissory note, which is the equivalent of 45.625% per annum, should be invalidated, as such rate "shocks the conscience, constitutes an invalid civil penalty, and is substantively unconscionable under applicable Ohio law." Rec. Doc. No. 144-2, at 19-20; *see* Rec. Doc. No. 149.   "Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party." *Retail Credit Corp. v. Shorterage*, 1996 WL 199831, *1 (Ohio Ct. App. 1996) (quoting *Collins v. Click Camera & Video, Inc.*, 621 N.E.2d 1294 (Ohio Ct. App. 1993)); *see also Orlett v. Surburban Propane*, 561 N.E.2d 1066 (Ohio Ct. App. 1989).   To establish that a contract provision is unconscionable, two prongs must be met: "(1) the terms of the contract are unfair and unreasonable, i.e., 'substantive unconscionability,' and (2) the individualized circumstances of the parties were such that no voluntary meeting of the minds was possible, i.e., 'procedural unconscionability.'" *Id.* Defendants do not seek summary judgment with regard to procedural unconscionability, but suggest that the default interest rate is "so obviously and clearly unreasonable and oppressive" that summary judgment is appropriate on their claim of substantive unconscionability.   Rec. Doc. No. 144-2, at 21.

14

In support of their claim, Defendants set forth Ohio's three main statutes regulating interest rates. *Id.* at 22. The general civil usury statute, Ohio R.C. § 1343.01, provides for a general cap of 8% per annum, although several exceptions apply, including where the principal amount of the debt exceeds $100,000, in which case no maximum rate is provided. Rec. Doc. No. 144-2, at 22; Rec. Doc. No. 163, at 17. Pursuant to Ohio R.C. § 1109.20, the highest interest rate that can be charged by an Ohio Bank is 25% per annum, regardless of the size of the loan. Rec. Doc. No. 144-2, at 22. Finally, Ohio's criminal usury statute, Ohio R.C. § 2905.21, defines "criminal usury" as illegally charging interest on an extension of credit as a rate exceeding 25% per annum, unless the rate of interest is otherwise authorized by law. Rec. Doc. No. 144-2, at 22; Rec. Doc. No. 163, at 18. Core argues that because the loan at issue in this case exceeds $100,000, the parties were specifically authorized by Ohio's civil usury statute to agree to an interest rate in excess of 8% per annum, and as such is authorized by law, Ohio's criminal usury statute is therefore inapplicable. Rec. Doc. No. 163, at 18.

Although Core correctly states that it is authorized by Ohio law to set an interest rate exceeding 8% per annum, at least one Ohio court has found that such authority is not limitless, striking down an interest rate of 107% per annum as unconscionable. *See Classic Funding, LLC v. Louis Burgos, LLC*, 2002 WL 31478977 (Ohio

Ct. App. 2002). Moreover, the majority of courts addressing interest rates between 35% and 50% have found such to be excessive, unreasonable, oppressive and unenforceable, some basing their conclusion in part on a comparison between the default rate and the general contract rate. *See* Rec. Doc. No. 144-2, at 23. Here, the contractual rate increased each year, however the interest rate upon default is over three times the contract rate for the first year (14.65%) and more than double the rate for the third year (17.25%). Accordingly, this Court finds that the default interest rate of 45.625% per annum is an unreasonable and excessive charge, **in terms of substantive unconscionability only.**

*F.    Attorney Fee Provisions*

Pursuant to Ohio R.C. § 1301.21, a commitment to pay attorneys' fees in a commercial contract of indebtedness is enforceable if the total amount owed at the time the contract was entered into exceeds $100,000 and the commitment to pay attorneys' fees obligates payment of a reasonable amount. Defendants argue, however, that "Ohio jurisprudence invalidates one-sided attorneys' fee provisions, which in effect act as a penalty against the debtor, provide no concomitant right to attorneys' fees to the debtor, and therefore encourage litigation by creditors." Rec. Doc. No. 144-2, at 24. Defendants claim that based on this general rule, the attorney fee provisions of the contracts at issue here are unenforceable as a matter of law. *Id.* at 25.

16

The United States Sixth Circuit Court of Appeals has recently stated that this general, jurisprudential rule is qualified, finding that "[u]nder Ohio law, contractual provisions requiring the payment of attorneys' fees are enforceable when arrived at 'through free and understanding negotiation' and where both parties 'were able to protect their respective interests.'" *Saad v. GE HFS Holdings, Inc.*, 2010 WL 623623, *10 (6th Cir. 2010) (citing *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 258 (Ohio 1987)).  The court further stated that this general rule was abrogated by Ohio R.C. § 1301.21.  *Id.*  As insufficient evidence exists at this time regarding whether the instant provisions were reached "through free and understanding negotiation" as well as concerning the reasonableness of the requested attorneys' fees, Defendants' Motion for Summary Judgment must be denied as to this issue.

## II.  Plaintiff's Motion for Summary Judgment

Core maintains that it is entitled to summary judgment with regard to the enforcement of the promissory note because although not in possession of the original loan documents, the requirements for enforcing a lost instrument pursuant to Ohio R.C. § 1303.38 are satisfied.  Rec. Doc. No. 160-3, at 7-12.  Specifically, Core argues that it can prove the terms of the note, the due date on which has passed without any amount of repayment made, and therefore Defendants are liable for the principal amount plus default interest, and Core is entitled to recognition and

17

enforcement of the Security Agreement and security interest, as well as all expenses, court costs, and reasonable attorney fees, all of which are expressly agreed to in the loan documents. *Id.* at 12-13. Core additionally contends that the Dart Defendants' liability as a payment guarantor or alternatively as an accommodation maker or accommodation indorser/anomalous indorser has been established. *Id.* at 13-15. Finally, Core asserts that the McIntire Defendants' counterclaim should be dismissed because Defendants cannot prove that the parties agreed to an extension of the due date for repayment of the $200,000 loan, nor can they show that a valid and enforceable agreement regarding an alleged $500,000 line of credit existed. *Id.* at 20-24.

A.   *Enforcement of the Note*

Core argues that although it is not in possession of the original loan documents, it is entitled to enforce the note pursuant to Ohio R.C. § 1303.38, which provides:

(A) A person not in possession of an instrument is entitled to enforce the instrument if all of the following apply:

(1) The person was in possession of the instrument and entitled to enforce it when loss of possession occurred.

(2) The loss of possession was not the result of a transfer by the person or a lawful seizure.

(3) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

18

> (B) A person seeking enforcement of an instrument under
> division (A) of this section must prove the terms of the
> instrument and the person's right to enforce the
> instrument. If that proof is made, divisions (A) and (B)
> of section 1303.36 of the Revised Code applies to the
> case as if the person seeking enforcement has produced
> the instrument. The court may not enter judgment in
> favor of the person seeking enforcement unless it finds
> that the person required to pay the instrument is
> adequately protected against loss that might occur by
> reason of a claim by another person to enforce the
> instrument. Adequate protection for the person required
> to pay the instrument may be provided by any reasonable
> means.

Core claims that it sent the original loan documents to its former
counsel, who filed the initial Complaint on behalf of Core in
August 2007 with copies of the documents attached; however, Core
maintains that although Core's former counsel was able to locate
Core's file, it was unable to find the original documents. Rec.
Doc. No. 160-3, at 7. Nevertheless, Core argues that it was in
possession of the note through its former counsel when the loss
occurred, the loss was not the result of a transfer, the
whereabouts of the note cannot be determined, and Core can prove
the terms of the note via a copy pursuant to the Federal Rules of
Evidence. *Id.* at 8.

Defendants dispute that Core has met the above stated
requirements. Defendants challenge whether Core has proven that it
was in possession of the instrument and entitled to enforce it at
the time the loss occurred, whether a transfer of the instrument
occurred, and the reasonableness of Core's ability to obtain
possession of the original documents. Rec. Doc. No. 169, at 7;

19

Rec. Doc. No. 173, at 5-7.  Moreover, Defendants contend that Core cannot prove the content of the original documents through copies in accordance with the Federal Rules of Evidence.  Rec. Doc. No. 169, at 8-10; Rec. Doc. No. 173, at 8-10.

Under Federal Rules of Evidence 1002 and 1003, to prove the content of a writing, the original is required; however, a duplicate is admissible to the same extent as an original *unless* (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.  Core maintains that there is no genuine question as to the authenticity of the original, as Defendants have not denied the validity of their signatures, they admit that they are not aware of any alterations to the text or content of the loan documents after they signed them, and the McIntire Defendants specifically admit that are not in possession of any loan documents that have different terms or conditions from the copies.  Rec. Doc. No. 160-3, at 9-11.  However, Defendants set forth several issues with the purported loan documents that sufficiently raise a genuine question regarding their authenticity.

First, Defendants maintain that the initials alleged to be McIntire's found in the bottom left corner of several of the documents, including the "Offer to Lend/Loan Contract," the Promissory Note, and the Executor Letter, are not McIntire's

20

initials,[3] they are not in McIntire's handwriting, they were not on
the papers that McIntire signed at the time he signed them, and
McIntire did not give his consent for those initials to be made on
the documents.   Rec. Doc. No. 169, at 4.   Additionally, the
McIntire Defendants challenge the dates purportedly written by
McIntire on the "Offer to Lend/Loan Contract," and although
admitting that the signatures contained on each of the alleged loan
documents look like McIntire's signatures, the Defendants maintain
that they cannot definitively state that they are indeed his
signatures.   *Id.* at 5.   Further, Defendants point out the
inconsistency in the dates and page numbering on the fax headers as
well as between two signatures on the Executor Letter, alleged to
be the signatures of the notary, yet Defendants claim they do not
appear to be made by the same person.   *Id.*   In fact, the McIntire
Defendants contend that the documents were not signed in the
presence of a notary and witnesses, at least not by McIntire.   *Id.*
at 6, 8-9.   The McIntire Defendants additionally claim that the
copies of the loan documents in their possession were not made
simultaneously with signing of the papers, but were provided at
some point later, as they claim that the initials and dates
allegedly made by McIntire that are found on the provided copies
were not on the documents signed by McIntire in January 2004.   *Id.*

---

[3]McIntire's initials are "MHM" while the markings on the documents
appear to be "MAM".   Rec. Doc. No. 173, at 8.

at 6.  The McIntire Defendants finally argue that the Social Security number found on the UCC Lien allegedly filed by Core is not McIntire's correct Social Security number.  *Id.*

As Defendants have provided testimony indicating several discrepancies in the documents relied upon by Core to prove the content of the note at issue, summary judgment in Core's favor regarding enforcement of the note is inappropriate at this time.

B.    *Liability of the Dart Defendants*

This Court has previously ruled that pursuant to Ohio R.C. § 1303.59(B)-(C), because the Dart Defendants' signature on the instrument at issue is accompanied by words indicating that the signer is acting as guarantor with respect to the obligation of another party to the instrument, the Dart Defendants are bound by the contract they signed as an accommodation party.  *See* Rec. Doc. No. 64, at 4.  Thus, the issue remains whether the Dart Defendants' guaranty is one of collection or payment.  The distinction is significant because a payment guarantor is primarily liable on the instrument, i.e. he agrees that if the instrument is not paid when due he will pay it according to its terms, and the person entitled to enforce the instrument need not resort to any other party. *Mutual Federal Savings Bank v. Sanford*, 2000 WL 327222, *11 (Ohio Ct. App. 2000).  On the other hand, a guarantor of collection is secondarily liable on the instrument, agreeing that if the instrument is not paid when due he will pay it according to its

22

terms, but only after the person entitled to enforce the instrument
has attempted unsuccessfully to recover from the maker or acceptor.
*Id.*

> Ohio R.C. § 1303.59(D) states:
>
> (D) If the signature of a party to an instrument is
> accompanied by words indicating unambiguously that the
> party is guaranteeing collection rather than payment of
> the obligation of another party to the instrument, the
> signer is obliged to pay the amount due on the instrument
> to a person entitled to enforce the instrument only if
> one of the following applies:
>
> (1) Execution of judgment against the other party has
> been returned unsatisfied.
>
> (2) The other party is insolvent or in an insolvency
> proceeding.
>
> (3) The other party cannot be served with process.
>
> (4) It is otherwise apparent that payment cannot be
> obtained from the other party.

In *Mutual Federal Savings Bank, supra*, 2000 WL 327222 at *11, the
Ohio Third District Court of Appeals addressed a similar issue to
the one raised here and interpreted the above section to "indicate
that if an accommodation party (guarantor) signs an instrument and
that signature is *not* accompanied by words indicating *unambiguously*
that the party is guaranteeing collection of the debt, the
accommodation party (guarantor) is obliged to pay the instrument
according to its terms when it was signed.  Conversely, if the
accommodation party's (guarantor's) signature is accompanied by
words indicating unambiguously that the party is only guaranteeing
collection of debt, the accommodation party is obliged to pay the

amount due upon the occurrence of one of several enumerated events."  In concluding that the guaranty at issue was one of payment, the court stated:

> In sum, the strong policy of R.C. § 1306.59 construing ambiguous guarantees as guarantees of payment rather than collection certainly mandates the conclusion that the language of this guaranty ["personally guaranteed by"] obligates the decedent as a guarantor of payment.  To bring the guaranty provision within the ambit of collection, [the signer] was required to use indicative terminology, such as the word "collection" or a similar word like "loss."  See, *Wolfe v. Schuster* (1979), 591 S.W.2d 926, 930 (1979); *Floor v. Melvin* (1972), 5 Ill.App.3d 463, 464-466, 283 N.E.2d 303, 304-305.

*Mutual Federal Savings Bank, supra*, 2000 WL 327222 at *12.

Here, the Dart Defendants' signature is not accompanied by unambiguous words indicating that the party is guaranteeing collection of the debt.  In fact, the loan documents fail to provide any express terminology with regard to whether the Dart Defendants' guaranty was one of collection or payment. Accordingly, the Dart Defendants' guarantee must be construed as one of payment, and therefore, their liability is not contingent upon any condition regarding the McIntire Defendants.

C.    *The McIntire Defendants' Counterclaim*

The McIntire Defendants assert that Core represented and verbally agreed, at or around the time the original $200,000 advance was made, to renegotiate and extend the due date of the initial loan if the Underlying Litigation was not concluded by January 5, 2007.  Rec. Doc. No. 169, at 12-13; *see* Rec. Doc. No.

89. Additionally, the McIntire Defendants claim that Core agreed to fund a line of credit of up to $500,000 to provide for the assessments necessary for McIntire Defendants to become and remain participants in the "25% Club." *Id.* at 13. The McIntire Defendants claim that they relied upon these agreements to their detriment when taking out the initial $200,000 loan from Core, as they would not have agreed to any loan from Core had they known first, that Core would demand payment and claim default before the Underlying Litigation was completed and second, that Core would not advance any funds beyond the initial $200,000. *Id.* at 13-14.

With regards to the oral extension of the alleged due date and the damages resulting from Core's claim of default, Core's motion seeking dismissal of the McIntire Defendants' Counterclaim must be denied. Core argues that the parol evidence rule prohibits extrinsic evidence, including alleged prior or contemporaneous oral agreements, that contradicts, varies, or modifies an integrated written contract. Rec. Doc. No. 160-3, at 17. "To say that a contract is integrated means that a court will presume that a complete and unambiguous written contract embodies the parties' final and complete agreement." *Worthington v. Speedway Superamerica LLC,* 2004 WL 2260501, *3 (Ohio Ct. App. 2004). "The presumption is strongest when the written agreement contains a merger or integration clause expressly indicating that the agreement constitutes the parties' complete and final understanding

25

regarding its subject matter," which Core provides the loan documents at issue contain. Rec. Doc. No. 160-3, at 17; *See Worthington, supra*, 2004 WL 2260501 at *3. Additionally, Core argues that the evidence fails to show an agreement, or meeting of the minds, in January 2004 about an extension of the due date in January 2007. Rec. Doc. No. 160-3, at 17-19.

As set forth above, Defendants have raised several challenges to the authenticity of the documents relied upon by Core, which call into question whether Core can prove the content and terms of the documents at issue. Accordingly, at this time, it is inappropriate to grant summary judgment on the basis that the parol evidence rule bars any evidence regarding an alleged oral agreement between the parties that modified the due date. Further, Defendants have provided competent testimonial evidence that Core, through its president, verbally agreed with both McIntire and Dart that after the initial three year term of the first advance, the loan would be renegotiated and extended depending on the status of the Underlying Litigation. Rec. Doc. No. 169, at 12; Rec. Doc. No. 173, at 19-20.

For the following reasons, however, the McIntire Defendants' Counterclaim based on Core's alleged agreement to fund a line of credit up to $500,000 is dismissed. Core claims that it faxed McIntire a letter regarding an offer for such line of credit, which stated that the agreement would become effective upon the return of

the executed letter indicating acceptance of the terms and conditions by *both* the McIntire and Dart Defendants. Rec. Doc. No. 160-3, at 21. While the McIntire Defendants claim that McIntire believes he did in fact sign the line of credit agreement, Dart explicitly stated in his deposition that he never signed it. Rec. Doc. No. 160-3, at 22; Rec. Doc. No. 169, at 13.

The McIntire Defendants nevertheless argue that "Core and McIntire had a firm verbal agreement as of January 2004 that Core would fund all assessments made in the Underlying Litigation, up to $500,000." Rec. Doc. No. 169, at 13. Yet, under Ohio law, "[a]n alleged oral contract is unenforceable pursuant to the Statute of Frauds contained in R.C. § 1335.05 where the agreement is not to be fully performed within a one-year period." *ZBS Industries, Inc. v. Anothony Cocca Videoland, Inc.*, 637 N.E.2d 956, 959 (Ohio Ct. App. 1994) (citing *Shepherd v. Westlake*, 600 N.E.2d 1095 (Ohio Ct. App. 1991); *DeCavitch v. Thomas Steel Strip Corp.*, 585 N.E.2d 879 (Ohio Ct. App. 1990); *Pullar v. Upjohn Health Care Serv., Inc.*, 488 N.E.2d 486 (Ohio Ct. App. 1984)). As the McIntire Defendants consistently maintained that the Underlying Litigation would not be concluded in one year and considering that the conditions of the "25% Club" required an initial balance of $200,000 with a commitment to pay one's share of costs only if the initial fund should become exhausted, the agreement clearly was not intended to be fully performed within a one-year period. Rec. Doc. No. 169, at

12-13.  Indeed, the McIntire Defendants did not request another loan from Core until March 2005 when they requested $10,000 and then in August 2005 when they requested $45,000.  Rec. Doc. No. 160-3, at 20-21.  Accordingly, such agreement was required to be in writing to be enforceable, and therefore summary judgment regarding the alleged $500,000 line of credit is appropriate.

## III. McIntire Defendants' Motion to Sever or Bifurcate Counterclaim

The McIntire Defendants' seek to sever the trial of their counterclaim from the trial of the main demand in this action, or alternatively to bifurcate the damages aspect of the counterclaim with damages to be tried later on the basis that their counterclaim, or at least the damages aspect thereof, is not ripe for trial at this time.  Rec. Doc. No. 167, at 1; Rec. Doc. No. 167-1, at 1.  Specifically, the McIntire Defendants contend that the economic loss allegedly suffered by their inability to advance the full amount of litigation costs necessary to earn a higher legal fee as part of the "25% Club," which resulted from Core's breach of the parties' alleged line of credit agreement, cannot be quantified at this time because the Underlying Litigation is not yet concluded and the final amount of attorneys' fees payable has not yet been finally determined.  Rec. Doc. No. 167-1, at 3-4.  However, this Court's previous finding that the alleged line of credit agreement is unenforceable and grant of Core's Motion for Summary Judgment dismissing the McIntire Defendants' claims based

on the alleged agreement renders the instant motion moot. Accordingly, the motion is **DISMISSED.**

 

New Orleans, Louisiana, this 11th day of May, 2011.

_____
United States District Judge